UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NICHOLAS H.,

        Plaintiff,

     -v-                        1:20-CV-457

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

OFFICE OF STEPHEN                     STEPHEN MASTAITIS, JR., ESQ.
  J. MASTAITIS, JR.
Attorneys for Plaintiff
150 Franklin Beach Road
Saratoga Springs, NY 12866

SOCIAL SECURITY                       NATASHA OELTJEN, ESQ.
  ADMINISTRATION                      Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION & ORDER**

## I. **INTRODUCTION**

On April 19, 2020, plaintiff Nicholas H.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides, *inter alia*, that an appeal taken from the Commissioner's final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings. *See* FED. R. CIV. P. 12(c).

Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. **BACKGROUND**

On December 12, 2016, plaintiff filed an application for DIB alleging that his various back and leg problems rendered him disabled beginning on

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

November 30, 2015. R. at 179, 273–74.[2] Plaintiff's claim was initially denied on February 8, 2017. *Id*. at 175–84. At his request, a hearing was held before Administrative Law Judge ("ALJ") Asad M. Ba-Yunus on September 24, 2018. *Id*. at 104–64. Plaintiff, represented by attorney Stephen Mastaitis, appeared and testified. *Id*. The ALJ also heard testimony from Vocational Expert ("VE") Cherie Plante. *Id*.

Thereafter, the ALJ issued a decision denying plaintiff's application for benefits from November 30, 2015, the alleged onset date, through November 30, 2018, the date of his written decision. R. at 80–90. This decision became the final decision of the Commissioner on February 14, 2020, when the Appeals Council denied plaintiff's request for review. *Id*. at 1–6.

## III. **LEGAL STANDARD**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

---

[2] Citations to "R." refer to the Administrative Record. Dkt. No. 12.

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520.[3] At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." § 404.1520(a)(4)(i). If so, the claimant is not disabled regardless of his medical condition or other factors. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities. § 404.1520(c).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1

---

[3] Section 404.1520 sets forth the five-step evaluation for Disability Insurance Benefits ("DIB"). A parallel set of regulations govern SSI applications. *See* 20 C.F.R. § 416.920(a)(4).

of the Regulations (the "Listings").  § 404.1520(d).  If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors.  § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work."  § 404.1520(e)–(f).  If so, the claimant is not disabled.  § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy.  § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five.  *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency").  42 U.S.C. § 405(g).  However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by

"substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up). "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). This is so regardless of whether or not the decision is otherwise supported by "substantial evidence." *See id.*

## IV. **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since November 30, 2015, the alleged onset date; (2) plaintiff's degenerative lumbar spine disease, several spinal surgeries, status-post hernia repair, and history of a left partial quadriceps

tear were "severe" impairments within the meaning of the Regulations; and that (3) these severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 82–83.

At step four, the ALJ determined that plaintiff retained the RFC to perform a limited range of sedentary work. R. at 83. In particular, the ALJ found that plaintiff could:

> perform sedentary work . . . except as restricted by the following: he would require the ability to alternate sitting/standing in up to 30 minute intervals; he may occasionally balance, stoop, kneel, and climb ramps/stairs, but may never crawl or climb ladders/ropes/scaffolds; he must avoid all hazards including unprotected heights/dangerous machinery, or operation of a motor vehicle.

*Id.* at 83.

The ALJ further found that plaintiff had past relevant work as an "order clerk," and that plaintiff could still perform this work based on the stated RFC finding. R. at 88–89. The ALJ also concluded that, even assuming plaintiff could no longer perform his past relevant work as an "order clerk," he could still work as a "sorter" or a "final assembler." *Id.* at 89. Because these representative jobs existed in sufficient numbers in the national economy, the ALJ concluded that plaintiff was not disabled during the relevant time period. *Id.* at 89–90. Accordingly, the ALJ denied plaintiff's application for benefits. *Id.* at 90.

### A. **Plaintiff's Appeal**

Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because he: (1) failed to credit the opinions of plaintiff's treating physicians; and (2) failed to accord proper weight to plaintiff's subjective testimony about his impairments. Pl.'s Mem., Dkt. No. 17 at 9–15, 19–21. Plaintiff further contends that the Appeals Council should not have refused to consider certain post-hearing records. *Id.* at 15–19.[4] Finally, plaintiff contends the ALJ failed to account for his "obesity." *Id.* at 21–23.

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'" *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v.*

---

[4] Pagination corresponds to CM/ECF.

*Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. supp. 3d 626, 640 (S.D.N.Y. 2019). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation omitted).

The medical component of the ALJ's RFC analysis relies primarily on the opinions of consultative examiner Kautilya Puri, M.D. and of non-examining consultant S. Padmaraju, M.D. R. at 87–88. These two consultants offered opinions about plaintiff's physical functioning shortly after he underwent a spine surgery in December of 2016. In particular, the ALJ afforded "significant weight" to Dr. Puri's January 17, 2017 opinion and "significant weight" to Dr. Padmaraju's January 24, 2017 examination of the evidence in the record. *Id.* at 165–72, 474–77.

Notably, however, the ALJ largely discounted the opinions of plaintiff's various treating sources. R. at 87–88. For instance, the ALJ assigned only "limited weight" to opinions from John Kavanaugh, M.D., the specialist who

treated plaintiff for his left thigh injury. *Id.* at 87. The ALJ also assigned only "limited weight" to opinions from a nurse practitioner and from John Whalen, M.D., an orthopedic surgeon who operated on plaintiff's lumbar spine. *Id.* at 88.

Broadly speaking, the Regulations divide evidence from a claimant's medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[5] The most important of these is the treating source category, which includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

The opinion of a treating source regarding the nature and severity of a claimant's impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Tammy Lynn B.*, 382 F. Supp. 3d at 193

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence. Because plaintiff's claim was filed before March 27, 2017, the prior Regulations still govern this appeal. *See, e.g., Cheri Lee H. v. Comm'r of Soc. Sec.*, 2020 WL 109007, at *6 n.7 (N.D.N.Y. Jan. 9, 2020).

- 10 -

(citation omitted). And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight. *Id.*

A treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case. *Tammy Lynn B.*, 382 F. Supp. 3d at 193–94 (citation omitted).

As an initial matter, the Court recognizes that the ultimate question of whether (and when) a claimant is disabled under the Act is an administrative

determination reserved to the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Thus, opinions from a claimant's treating sources that assign a specific percentage of disability or that state a claimant must be "off work" for a period of time cannot control the outcome of a benefits claim.

This is true of the various worker's compensation forms filled out by Dr. Kavanaugh in 2016, the surgeon who treated plaintiff's thigh injury. *See, e.g.*, *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 345 (S.D.N.Y. 2020) (explaining that the standard for disability under the Act differs in substantial ways from the standards under worker's compensation laws).

This is also true of Dr. Whalen's post-surgical assessment from 2018, which opined that plaintiff is "100% disabled" and "out of work completely." *See, e.g.*, *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (Sharpe, J.) ("[A] treating physician's disability assessment is not determinative.").

Likewise, "[i]t is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (Suddaby, J., adopting Report & Recommendation of Bianchini, M.J.); *see also Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) (collecting cases). Thus, it is often perfectly acceptable

for an ALJ to support his RFC finding with evidence from consultants like Drs. Puri and Padmaraju.

Even so, this matter must be remanded to the Commissioner for further administrative proceedings because the ALJ's RFC finding is not based on substantial evidence. The consulting opinions in this case were both rendered in January of 2017, shortly after plaintiff underwent a laminectomy and discectomy of his lumbar spine in December of 2016. R. at 445–47.

But this December 2016 spine surgery is only the first of *three* different spine surgeries reflected in the medical record. In addition to this December 2016 surgery, plaintiff also underwent a "revision laminectomy" and a "decompressive laminectomy" with fusion. R. at 570–71, 712–15. Dr. Whalen performed these latter two operations in March and August of 2018.

As a result, the two January 2017 consultative opinions on which the ALJ relied totally fail to account for any change in plaintiff's condition (for better or worse) after these two additional surgeries in 2018. And because the consulting opinions were rendered just shortly after plaintiff's first surgery, these opinions also fail to account for any longer-term developments in plaintiff's course of post-operative recovery that might have led him (reasonably or unreasonably) to seek out the two additional surgical interventions in 2018.

The ALJ appeared to recognize this shortcoming in his RFC finding (which covers the entire period in issue) and attempted to fill in the gap between the "fully disabled" opinion offered by Dr. Whalen in his September 2018 assessment (following the most recent spine surgery) and the earlier findings offered by Drs. Puri and Padamaraju in their January 2017 assessments (following the first surgery). R. at 86–87.

First, the ALJ recounted evidence showing that plaintiff consistently recovered pretty well from his prior leg and back surgeries. The ALJ relied on this observation to opine that plaintiff would probably recover fairly well from spine surgery this time around, too. R. at 86 ("The claimant did experience improvement with surgeries in the past for extended periods before re-injury.").

Second and relatedly, the ALJ noted that plaintiff's September hearing testimony occurred shortly after his most recent spine surgery in August. The ALJ relied on this fact to opine that the "very serious symptoms" reported by plaintiff in his testimony at that time were unlikely to persist for a full twelve months as required by the Act. *Id.*

Both of these conclusions might wind up being accurate. But neither of them are supported by substantial evidence in the current administrative record. Instead, they are based on the speculative inference that plaintiff is

likely to recover from his latest surgeries to a sufficient degree that he will again be able to perform a limited range of sedentary work.

To be sure, a limited range of sedentary work demands far fewer residual exertional abilities than the "heavy" and "very heavy" jobs that plaintiff worked before his first surgery. *See* R. at 155, 605. But the ALJ has not pointed to evidence in the record from which to fairly conclude that plaintiff will once again recover to the baseline state of physical functioning that Drs. Puri and Padamaraju assessed back in January of 2017.

After all, every surgical intervention brings its own unique challenges. Patients are not guaranteed an uncomplicated course of recovery; sometimes surgery even makes things worse. Indeed, Dr. Whalen's treatment notes reflect a healthy skepticism about whether further spine surgeries would benefit plaintiff in a meaningful way. R. at 568 ("While I believe surgery would have a reasonable change of helping with the leg symptoms, there are no guarantees and a chance you could go through it all and be the same or worse following surgery."), 710 (quoting same warning by Dr. Whalen), 702 (opinion from consulting neurosurgeon stating that he was "not convinced" a third surgery would improve symptoms).

This makes the ALJ's decision to basically discount plaintiff's post-surgical hearing testimony all the more troubling. "An ALJ may properly reject subjective complaints after weighing the objective medical evidence in the

- 15 -

record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Samantha S.*, 385 F. Supp. 3d at 188 (cleaned up). To discharge that responsibility, the ALJ must discuss the relationship between the plaintiff's impairments and his reported symptoms, explain his conclusions about the plaintiff's functional abilities, and express his reasoning about why the plaintiff's reported symptoms are not consistent with the evidence in the record. *See id.*

It helps to keep in mind that the benefits hearing in this case occurred in September of 2018, shortly after plaintiff's third spine surgery in August. R. at 104. At that time, plaintiff testified to being seriously limited in his ability to handle any sustained physical exertion. This included even simple things like being able to tolerate staying seated as a passenger in a car for a short period of time. *See id.* at 113–14, 144–45.

As relevant here, plaintiff also testified about various limitations that would seem to preclude him from performing even the limited range of sedentary work assessed by the ALJ. R. at 132. For instance, plaintiff testified that he can no longer concentrate on tasks, has continued trouble with his "bowels," and that he sometimes goes in his pants. R. at 132. Plaintiff also testified that he would need to lie down periodically throughout the day or sometimes need to elevate his legs while sitting. *Id.* at 132, 158.

The ALJ discounted this recent testimony about severe symptomatology using essentially the same logic he employed to discount the more recent medical evidence; *i.e.*, he believed that once plaintiff fully recovered from his most recent surgery his physical functioning will at a minimum return to the baseline assessed by Drs. Puri and Padamaraju in January of 2017.

Again, though, it is hard to call that conclusion anything more than an informed guess at this point. That is especially so where, as here, the ALJ failed to point to any contemporaneous evidence that actually undermines plaintiff's testimonial assertions about his then-current (in)ability to function in the wake of his most recent surgery. *Cf. Samantha S.*, 385 F. Supp. 3d at 188 (rejecting credibility challenge where "ALJ accurately summarized plaintiff's testimony, juxtaposing her claims of severe, disabling limitations with other findings by the various medical providers in the record").

In sum, the ALJ's RFC finding is not supported by substantial evidence. On remand, the claimant might consider offering up more detailed assessment(s) of his current physical functioning from one or more of his current treating sources, such as Dr. Whelan. *See, e.g.*, *Jennifer Rose D. v. Comm'r of Soc. Sec.*, 2020 WL 68615, at \*4 (N.D.N.Y. Jan. 7, 2020) (explaining that the primary responsibility for developing the record belongs to the claimant). Likewise, the ALJ might consider it beneficial to send plaintiff to another consultative examiner who can express a fresh opinion

that takes into account any changes (for better or worse) that have resulted from the additional surgeries. *See, e.g.*, *Fambo v. Comm'r of Soc. Sec.*, 474 F. Supp. 3d 603, 608 (vacating ALJ's RFC finding because it was based on a "stale" consultative examination that failed to account for the claimant's deteriorating condition).

## IV. CONCLUSION

Because a remand is warranted, it is unnecessary to reach the remaining arguments. This case will be remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings.

Therefore, it is

ORDERED that

1. Plaintiff's motion for judgment on the pleading is GRANTED in part and DENIED in part;

2. The Commissioner's motion for judgment on the pleadings is DENIED;

3. The Commissioner's final decision is VACATED; and

4. This matter is REMANDED for further administrative proceedings.

IT IS SO ORDERED.

Dated: July 26, 2021
      Utica, New York.

David N. Hurd
U.S. District Judge